UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEINAHTAN JELKS,

        Plaintiff,

v.

IVAN BELEW, GARNETTE STEEN, JUAN
WINDHAM, AND CITY OF DETROIT,

        Defendants.

                                     /

Case No. 12-12387

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [38]**

After Detroit police officers Ivan Belew, Garnette Steen, and Juan Windham discovered on April 8, 2010 that Plaintiff Leinahtan Jelks' Concealed Pistol License ("CPL") had been suspended, Plaintiff was arrested and charged with illegally carrying a concealed weapon. Plaintiff was in jail for six days before being released on a $2,000 bond. It turns out that the Michigan Law Enforcement Information Network ("LEIN"), the database that the officers used to verify Plaintiff's CPL, was incorrect; Plaintiff's license was in fact valid on the day of his arrest. The charge against Plaintiff was dropped on May 7, 2010, and Plaintiff subsequently filed this lawsuit against the Defendants on June 1, 2012, alleging violations of his rights under the Second, Fourth, and Fourteenth Amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983.

For the reasons stated below, the Court will **DENY IN PART** Defendants' Motion for Summary Judgment [38].

## FACTUAL BACKGROUND

Given the nature of Defendants' motion, the Court will construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At approximately 1:30 A.M. on April 8, 2010, Plaintiff went to a gas station convenience store in northeast Detroit to buy cigarettes. Officers Belew, Steen, and Windham were on routine patrol duty in the area. They had stopped at this particular store because it was a regular site for illegal narcotic activity. Officer Belew observed Plaintiff as he entered the store, and noticed the handle of a gun protruding from Plaintiff's waistband. Officer Belew approached Plaintiff and asked about the gun. Plaintiff told the officers that he was licensed to carry it and handed over his CPL. Two officers detained Plaintiff and secured his gun while the third ran Plaintiff's CPL through Michigan's LEIN, a database maintained by the State of Michigan. According to the LEIN printout, Plaintiff's CPL had been suspended since October 27, 2008.

Mr. Jelks was arrested and charged with illegally carrying a concealed weapon pursuant to M.C.L. § 750.227.[1] He was jailed for six days and released on $2,000

---

[1] M.C.L. § 750.227 provides in pertinent part: "(2) A person shall not carry a pistol concealed on or about his or her person … without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner

bond. As it turns out, the LEIN printout gave inaccurate information: Plaintiff's license was not, in fact, suspended at the time of his arrest. Plaintiff provided a letter to the Court from the Wayne County Clerk which indicates that the CPL had been reinstated nearly a year before the arrest. The letter states: "According to Wayne County Clerk records, Mr. Jelks had a valid CPL permit from 4/14/2009 to 4/8/2010."[2] The charge against Plaintiff was dropped on May 7, 2010. Although Plaintiff appeared before the gun board to retrieve his gun and CPL license, the City of Detroit has refused to release Plaintiff's gun.

### STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party cannot rest on the pleadings and must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475

---

inconsistent with any restrictions upon such license. (3) A person who violates this section is guilty of a felony . . ."

[2] The CPL was suspended again on April 8, 2010 as a result of the arrest. It has since been reinstated.

U.S. at 586-87. Rather, he must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (*quoting* Rule 56(e)); *see also United States v. WRW Corp.*,986 F.2d 138, 143 (6th Cir. 1993). Where the record completely contradicts the movant's version of the facts so that no reasonable jury could believe it, the court should not adopt the movant's version of the facts. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

## ANALYSIS

### I. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "To determine whether an officer is entitled to qualified immunity, a court evaluates two independent prongs: whether the officer's conduct violated a constitutional right, and whether that right was clearly established at the time of the incident." *Richko v. Wayne County, Mich.*, 819 F.3d 907, 914–15 (6th Cir. 2016) (citing *Pearson*, 555 U.S. at 232). A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). It is not enough for a plaintiff to show that a violation occurred; the plaintiff must also show that the law had already

been established in such a particularized way that the defendants should have known that their conduct was illegal. Thus, a qualified immunity claim can fail if the plaintiff fails to satisfy either requirement. *Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Government agents are entitled to qualified immunity if they can show that their actions were objectively reasonable in light of the law existing at the time. *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 220 (6th Cir. 2004). "In other words, qualified immunity is appropriate . . . on the basis that the right allegedly violated, [even] if clearly established, was one that a reasonable person in the defendant's position could have failed to appreciate would be violated by his conduct." *Pray*, 49 F.3d at 1157 (internal quotations omitted). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

Plaintiff argues that the Defendants violated the Fourth Amendment by arresting him without probable cause. He points out that at the time the officers approached him, he was not committing a crime, nor was there any reason to suspect he had committed one.

Plaintiff is correct in arguing that summary judgment on the qualified immunity issue should be denied. The question here, however, is not whether the officers had probable cause to arrest. Everything about Plaintiff's encounter with the three officers was acceptable until they took his gun and detained him while they checked his CPL

against the LEIN. Quite simply, the officers had no justification to hold Plaintiff or take his weapon after he gave them his facially valid license.

Police-citizen encounters take several forms: "consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention or *Terry* stop which must be predicated upon reasonable suspicion; and arrests which must be based on probable cause." *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994). The initial encounter between Plaintiff and the officers was consensual. Consensual encounters are "permissible without any particularized suspicion because no seizure has occurred for purposes of the Fourth Amendment." *United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004). "Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage – as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991) (internal citations omitted).

The parties agree that the officers approached Plaintiff in the convenience store and asked about his weapon. That activity is not proscribed by the Fourth Amendment. *See Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place . . . by putting questions to him if the person is

willing to listen . . ."). Plaintiff told the officers that he had a CPL and produced it for them. There is no evidence in the record to indicate that anything was facially problematic about Plaintiff's CPL.

The encounter should have ended here, but the officers took it a few steps further. First, they ordered Plaintiff to relinquish his gun. At this point, Plaintiff had been seized because he submitted to the officers' show of authority. *See California v. Hodari D*, 499 U.S. 621, 626 (1991) (a seizure occurs when an officer applies physical force or some other show of authority to which the individual yields). Next, the officers used the LEIN to verify Plaintiff's CPL. Under these facts, the officers lacked "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the removal of Plaintiff's gun and the LEIN check. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

Plaintiff was not doing anything suspicious when the officers first engaged him; Plaintiff merely walked into the store and the officers permissibly approached him and asked about the weapon he carried. Plaintiff produced his seemingly valid CPL for the officers. Therefore, there was no justification for the subsequent detention, removal of the gun from Plaintiff's possession, or the LEIN check.

The only fact that the officers can rely on here is that they saw Plaintiff carrying a weapon. "The Fourth Amendment no doubt permitted [the officers] to approach [Jelks] and ask him questions. But that is not [all they] did." *Northrup v. City of Toledo Police Dept.*, 785 F.3d 1128, 1131 (6th Cir. 2015). After Jelks turned

over his license, the officers disarmed him, detained him, and ran his license through the LEIN. Their actions contravened Michigan law, which provides:

> (1) An individual who is licensed to carry a concealed pistol shall have his . . . license to carry that pistol and his . . . state-issued driver license or personal identification card in his . . . possession at all times he . . . is carrying a concealed pistol . . .
>
> (2) An individual who is licensed to carry a concealed pistol and who is carrying a concealed pistol . . . shall show both of the following to a peace officer upon request by that peace officer:
>
>> (a) His or her license to carry a concealed pistol.
>> (b) His or her state-issued driver license or personal identification card.
>
> (3) An individual licensed under this act to carry a concealed pistol and who is carrying a concealed pistol . . . and who is stopped by a peace officer shall immediately disclose to the peace officer that he or she is carrying a pistol . . . concealed upon his or her person or in his or her vehicle.

M.C.L.A. § 28.425f(1)-(3). Officer Belew properly inquired as to whether Jelks possessed the proper license. Jelks produced the license as required, and thus, he was allowed "to do exactly what he was doing." *Northrup*, 785 F.3d at 1131. Because there was nothing to support the conclusion that Jelks was committing a felony – or indeed, doing anything wrong – the officers have not articulated specific facts to justify the prolonged investigatory detention. The Fourth Amendment requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27. It is clear that the encounter should have ended after the officers viewed Jelks' license.

Qualified immunity is also inappropriate because the officers did not act in accordance with M.C.L.A. § 28.428(8), which states,

> If an individual is carrying a pistol in violation of a suspension or revocation order or amended order issued under this section but has not previously received notice of the order or amended order, the individual shall be informed of the order or amended order and be given an opportunity to properly store the pistol or otherwise comply with the order or amended order before an arrest is made for carrying the pistol in violation of this act.

Therefore, even assuming the LEIN check was proper and that Plaintiff's license was in fact suspended, the officers should have given Jelks time to stow his gun and comply with the suspension order.

The Fourth Amendment prevents law enforcement from impermissibly infringing on the privacy rights of individuals. "[I]t has long been clearly established that an officer needs evidence of criminality or dangerousness before he may detain and disarm a law-abiding citizen." *Northrup*, 785 F.3d at 1133. After reading the factual inferences in the record in Jelks' favor, the Court finds that the officers could not reasonably suspect that Jelks needed to be disarmed, or that he had been or was about to commit a crime.

## II.    Municipal Immunity

Plaintiff seeks to hold the City of Detroit liable for the violations of his civil rights. When a § 1983 claim is made against a municipality, the Court must examine two distinct issues: 1) whether plaintiff's harm was caused by a constitutional violation; and 2) if so, whether the city is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). With respect to the first issue, "where no constitutional violation by the individual defendants is established, the

municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001). And as for the second inquiry, municipalities, counties, and other governmental entities cannot be held liable for an injury inflicted solely by its employees or agents unless there is a direct causal link between a municipal policy or custom and the alleged constitutional tort. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Plaintiff must "show[] that the unconstitutional policy or custom existed, that the policy or custom was connected to the county [or other government entity], and that the policy or custom caused his constitutional violation." *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 743 (6th Cir. 2001).

Although Plaintiff has shown the occurrence of a violation, he has not established the existence of a custom or policy that would cause it. In fact, Plaintiff does not identify any formal policy at all, so the question is whether he has established a custom. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision-maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 441-42 (6th Cir. 2000) (*quoting Brown*, 520 U.S. at 404); *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (a "custom" for purposes of liability must "be so permanent and well settled as to constitute a custom or usage with the force of law"). "[T]he notion of 'law' must include deeply embedded traditional ways of carrying out

state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a 'custom' is a 'legal institution' not memorialized by written law." *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 507-08 (6th Cir. 1996). Plaintiff must provide evidence reaching beyond the facts of his own case to establish the possibility of a pattern. *Thomas v. City of Chattanooga*, 398 F.3d 426, 433-34 (6th Cir. 2005).

Plaintiff claims that the City of Detroit has implemented a variety of unconstitutional customs, including, among others: tolerating and encouraging law enforcement to harass citizens by performing warrantless and unconstitutional searches; failing to adequately screen, hire, and train capable and professional police officers; failing to adequately supervise and monitor police officers; and deliberately destroying and/or failing to retain evidence.

"[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). U.S. Supreme Court and Sixth Circuit precedent make clear that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388; *see also McLendon v. City of Detroit*, 255 Fed. Appx. 980, 983 (6th Cir. 2007).

As evidence of the City's allegedly unconstitutional practices, Plaintiff cites *Green v. Morsey*, No. 15-12508, another case currently pending with the Court against the City of Detroit. Plaintiff notes:

> [T]his is not the first case in which City of Detroit police officers have claimed that a perfectly viable CPL was expired." In *Green v. Morsey* . . . City of Detroit police officers also claimed that a valid CPL had expired, and also arrested the plaintiff in that case. The defendant-officers were not disciplined in that case, just as they escaped discipline in this case.

Plaintiff says nothing more about *Green v. Morsey*.

Just as the Plaintiff cannot rest on the pleadings of the case at hand, he cannot rest on the pleadings of an entirely different case, regardless of what judge the case was assigned to and who represents the plaintiff. *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) (court is not required to speculate as to what portion of the record is being relied upon by the nonmoving party, nor is there an obligation for court to "wade through" the record for specific facts). Plaintiff makes only naked assertions which are inadequate to support a finding of municipal liability under § 1983. *See McClendon*, 255 Fed. Appx at 983.

## CONCLUSION

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment [38] is **DENIED IN PART** and **GRANTED IN PART.** Defendants Belew, Steen, and Windham are not entitled to qualified immunity because there was nothing to justify their decision to detain Plaintiff and confiscate his weapon after he produced his

facially valid license. However, it is clear that there is no evidence upon which to support a claim for municipal liability against Defendant City of Detroit.

**SO ORDERED**.

Dated: April 6, 2017

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge